ZENOPHILE P. BROSSEAU

*v.*

HAIMAN LOWY.

*Opinion filed April 20, 1904.*

1. MORTGAGES—*when grantee of mortgaged property assumes the debt.* If the amount of a prior mortgage is to be paid by a grantee of land as part of the purchase price, he is held to have assumed the debt, and express words to that effect in the deed are unnecessary.

2. SAME—*when a mortgage debt is discharged—priority.* Where a grantee assumes a mortgage debt as part of the consideration and afterwards conveys the property by warranty deed, neither deed making reference to the mortgage, her subsequent payment of the mortgage note discharges the debt, and she cannot, by assigning the note to a third party, invest him with a lien superior to the purchase money mortgage given by her grantee.

3. EVIDENCE—*fact that mortgage debt was assumed may be shown by parol.* The fact that a mortgage debt upon the property was assumed by the purchaser as part of the consideration may be shown by parol, although the deed contains full covenants of warranty and makes no reference to the mortgage.

*Lowy* v. *Boenert*, 110 Ill. App. 16, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

The question presented by this suit is the determination of the priority of two certain mortgages or trust deeds. The suit was brought June 20, 1900, by the appellee, Haiman Lowy, in the circuit court of Cook county, to foreclose a trust deed executed by George Gillespie to Anton Boenert, as trustee, to secure the payment of three promissory notes, aggregating $8000, executed by said Gillespie, payable to his own order and by him endorsed, dated February 15, 1896, and all payable on or before February 15, 1899, which said notes and trust deed were the property of Auguste Boenert, wife of said Anton Boenert, who pledged them to said Lowy as collateral security for a loan of $6000 made by said Lowy to

Anton Boenert on April 30, 1896. The other party contesting for priority of his mortgage is Zenophile P. Brosseau, appellant here, who is the holder of a promissory note executed by one William Ziese on August 23, 1878, payable to his own order and by him endorsed, and secured by a trust deed to George Coombs, as trustee, duly acknowledged and recorded on August 27, 1878, which said Ziese trust deed encumbers the same property as the trust deed subsequently executed by George Gillespie, above referred to.

The history of these two trust deeds, and the notes secured by them, may be briefly stated, as follows: August 23, 1878, Anton Boenert, being the owner of the east half of the south-east quarter of section 12, sold and conveyed it to William Ziese, his brother-in-law. August 26, 1878, Ziese executed the note and trust deed now held by Brosseau, to secure a loan of $1500 made to him by George Coombs, the trustee in the said deed, as agent for one Brander. March 30, 1883, Ziese and wife sold their equity in said land to Auguste Boenert for $1200, nothing being said in the deed of conveyance about the trust deed theretofore executed by Ziese and the lien thereunder. July 10, 1890, Coombs released the north-east quarter of the south-east quarter of said section from said trust deed, and on November 18, 1891, he also released the south-half of the south-east quarter of the south-east quarter of said section from said trust deed, both releases being made at the instigation and request of Anton Boenert. The Ziese note was executed August 26, 1878. It was for $1500, and was payable in three years. On it are numerous endorsements of interest paid and extensions of time for payment, all said to be in the handwriting of Anton Boenert but not signed by anyone. Finally, in February, 1893, as a condition for further extending time of payment of the Ziese note, which was still in the possession of Coombs, as agent, Auguste Boenert was required to give a gold note, running for two

years, for the indebtedness, and Coombs still retained
the Ziese, note and trust deed as collateral security for
the payment of the gold note.  July 21, 1895, Auguste
Boenert and husband conveyed, by warranty deed, the
remaining twenty acres not released from the Ziese mort-
gage, being the premises in controversy, to George Gil-
lespie, which deed was filed for record February 21, 1896.
February 15, 1896, Gillespie and wife executed the notes
and trust deed now held by appellee, Lowy, and on April
30, 1896, Anton Boenert gave the Gillespie notes and trust
deed to Lowy as collateral security for the above men-
tioned loan of $6000.  May 13, 1896, Auguste Boenert paid
the gold note given to Coombs, and she received from him
the Ziese note and trust deed, uncanceled.  On February
24, 1898, the said $1500 Ziese note, being then in the posses-
sion of Auguste Boenert, was sold by her for $1250 to the
appellant, Brosseau.  Neither the deed from Ziese to Au-
guste Boenert, nor the deed from Auguste Boenert to Gil-
lespie, makes mention of the Ziese mortgage or trust deed.

The evidence in this case was taken before a master
in chancery, and was, under stipulation, read upon the
hearing below.  The trial court gave priority to the lien
of the Ziese mortgage, which secures the note held by
the appellant, Brosseau, but on appeal to the Appellate
Court the decree of the circuit court was reversed and an
order entered remanding the cause to the circuit court,
with directions to that court to give the appellee, Lowy,
holder of the Gillespie notes and mortgage, a first lien,
and the appellant, Brosseau, a second lien.

SAMSON & WILCOX, for appellant.

CONSIDER H. WILLETT, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellant contends that the transfer of the Gillespie
notes and trust deed in question by Anton Boenert to ap-
pellee, Lowy, as security, was without the knowledge

or authority of Auguste Boenert, who seems to have been the owner. On the part of appellee, Lowy, it is contended that such action on the part of Anton Boenert was with the authority and as the agent of his wife, Auguste, and there is evidence in the record to support such contention. The trial court, in the opinion attached to appellant's brief and based on the same evidence here presented, also states: "The proof also tends to show that Anton Boenert was the agent of his wife, having full power and authority to bind her in all matters." The Appellate Court has also accepted such conclusion, and we are satisfied to concur therein. If, then, as stated by the trial court, "Anton Boenert was the general agent of his wife, having full power and authority to bind her in all matters," the transfer of the notes and trust deed to appellee, as security, by Anton Boenert, though his wife may have been the legal owner of the same, was binding upon her, and we cannot sustain the insistence of appellant that the transfer in question, being for the benefit of Anton Boenert, was therefore not binding upon his wife.

The question next remains to be considered, what effect did the purchase of the land from Ziese by Auguste Boenert, and her subsequent conduct in reference thereto, have upon the Ziese note and trust deed? It is contended by appellee, and was so held by the Appellate Court, that the Ziese $1500 note, secured by the trust deed to Coombs, which encumbered eighty acres, of which the twenty acres subsequently encumbered by the trust deed now held by appellee, Lowy, form a part, constituted a part of the consideration for said purchase. The evidence would seem to leave no doubt of the correctness of this contention. Ziese and Boenert both testified that only $1200 in cash was paid to Ziese for the conveyance to Auguste Boenert. Ziese stated, when asked who was to pay his $1500 note: "Not me; the man that followed me was to pay it; the mortgage stays on the farm until

the farm was sold to somebody else." He also stated that he was never asked to pay the note, or to pay the interest thereon, after he sold the farm; that he knew nothing about the extensions of time or changes as to the interest, which, with the payments of interest, were endorsed on the note. When asked if he was to pay his note after such sale, he answered: "I could not pay the $1500; I don't own the land; I guess the owner of the land has to pay." And in reply to the further inquiry if he paid it, he replied, "No." Anton Boenert testified that Ziese said to him, "If you or your wife, or whoever buys the property, gives me so much for my equity, I will convey the property and go to Dakota," and that the consideration in the deed was $8000 because the land was then considered worth $100 per acre. The cash payment and the Ziese note together would make but $2700. How the difference between this amount and the consideration named in the deed was made up, if it was made up at all, the record does not disclose.

The facts connected with the execution of the two release deeds also tend strongly to show that Auguste was to pay the Ziese note as a part of the purchase price, in the purchase of the land from Ziese. Ziese was not consulted and had no knowledge of their execution. The release deeds, being for sufficient land to pay the note, released Ziese of all personal liability. After Mrs. Boenert received the Ziese deed she paid the interest on the Ziese note to Coombs, and finally, in order to procure a still further extension of the Ziese note, the Boenerts, on February 26, 1893, gave Coombs a gold note for $1500, due in two years, and after the giving of that note no interest was paid on the Ziese note, but it was still held by Coombs as collateral security for the gold note, and finally, when the gold note was paid by Mrs. Boenert, in 1896, the Ziese note was surrendered to her. The loan of the $6000 from Lowy was obtained April 30, 1896,— just a few days before the gold note was paid,—and it is

likely it was from this source that the money was obtained to pay off the gold note.

The conduct of Mrs. Boenert, and the testimony of Anton Boenert and Ziese, seem conclusively to indicate that Mrs. Boenert was to pay the Ziese $1500 note as a part of the purchase price of the equity of Ziese, and if, then, we accept such to be the fact, and also that Mrs. Boenert assumed the encumbrance on the land by her thus purchased, the land became the primary fund for the payment of said encumbrance, and when Mrs. Boenert purchased the Ziese note the encumbrance was discharged. (*Lilly* v. *Palmer*, 51 Ill. 331; *Drury* v. *Holden*, 121 id. 130, and cases cited.) The Ziese note and encumbrance, by the surrender of the said note to Mrs. Boenert, the legal owner of the fee, were discharged, and it was impossible, by any manner or form of transfer, as to third parties, to keep the same alive. In the case at bar, Coombs, the trustee in the trust deed, at the solicitation and request of one or both the Boenerts, and without the knowledge of the mortgagor, Ziese, not only extended the time of payment of the indebtedness, but released more than enough of the land covered by the trust deed necessary to make good the entire debt; so the mortgagor must have been released, even as to the liability of a surety, which relation he might otherwise have held.

The rule to be extracted from the numerous holdings of the courts upon this subject is, that where the amount of the mortgage is to be paid as a part of the purchase money, it is an assumption of the debt, (*Thayer* v. *Torrey*, 37 N. J. L. 344;) and that precise and formal words are unnecessary to impose upon a grantee an engagement to pay off a mortgage, but the inquiry is as to the intention of the parties. (*Collins* v. *Rowe*, 1 Abb. N. C. 99.) In *Drury* v. *Holden, supra,* this court said (p. 137): "It is well established that when a party purchases premises which are encumbered, to secure the payment of indebtedness, and assumes the payment of the indebtedness as a part of the

purchase money, the premises purchased are in his hands a primary fund for the payment of the debt, and it is his duty to pay it. (*Lilly* v. *Palmer*, 51 Ill. 331; *Russell* v. *Pistor*, 3 Seld. 171.) And the rule is the same, although there be no assumption of payment of the indebtedness, if the purchase be made expressly subject to the encumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration of the conveyance.—*Lilly* v. *Palmer*, *supra*; *Comstock* v. *Hitt*, 37 Ill. 542; *Fowler* v. *Fay*, 62 id. 375; *Russell* v. *Pistor*, *supra*; *Ferris* v. *Crawford*, 2 Denio, 598." In *Winans* v. *Wilkie*, 41 Mich. 264, it was held that if a grantee of mortgaged premises assumes the encumbrance and afterwards takes an assignment of the mortgage, he extinguishes the debt and cannot afterwards give any right to foreclose the mortgage by assigning it. In *Carlton* v. *Jackson*, 121 Mass. 592, it was held that when an encumbrance is paid by one whose duty it was, by contract or otherwise, to pay it, such payment effected a release or discharge of the debt, and it could not thereafter be kept alive for any purpose.

The appellant, however, contends, that inasmuch as Ziese conveyed his equity to Auguste Boenert "by a warranty deed with full covenants, and nothing was said about the payment of encumbrances," oral evidence showing that the grantee, Auguste Boenert, assumed the encumbrance was incompetent. The rule of this court is against this contention. In *Drury* v. *Holden*, *supra*, it is stated (p. 137): "It is said the deed from Daggett to Drury contained full covenants of warranty, to which there was no exception; that thereby Drury's grantor covenanted that he would warrant and defend the lots conveyed, against the holders of all encumbrances. The covenants extended only to what was conveyed, and that was not the lots absolutely, but the lots subject to the encumbrance." And on page 138: "It is objected that oral evidence was inadmissible to show that the

amount of the encumbrances was deducted from the amount of the purchase price, and allowed to Drury. The evidence being in regard to what constituted the consideration of the deed to Drury and that the amount of the encumbrances was included in and formed a part of the consideration, was clearly competent, under the rule which permits parol evidence upon such subject of the consideration of a deed." In *Lloyd* v. *Sandusky*, 203 Ill. 621, after referring with approval to the case above quoted, we said (p. 631): "Whenever the question has come before this court it has been uniformly held that the statement of the amount of the consideration and acknowledgment of its receipt in the deed were formal recitals, their only operation, in law, being to prevent a resulting trust, and that they might be explained, varied and contradicted by parol evidence."

It may be contended that the application of the views above expressed, and to deny the appellant the relief he seeks, will operate with much harshness as to him; but such condition could only result from his neglect to attend to what was manifestly his duty, and against such negligence equity does not afford relief. It was appellant's duty, as the assignee of a trust deed, if he wished to protect himself, to have inquired of the maker thereof as to the status of the debt. Had he done so he would have learned sufficient to have put him on his guard. The position of appellee is entirely different. He took the notes pledged to him under representations that they were purchase money notes and the trust deed securing them was a first lien on the premises, and further inquiry would have developed the fact that the Ziese note had been surrendered by Coombs, the trustee under the Ziese trust deed, the same having been duly paid; and the fact that said note had been surrendered to Auguste Boenert, the purchaser from Ziese, and owner of the fee in the premises conveyed, who subsequently conveyed the same to Gillespie by warranty deed, would have justified the

legal conclusion that then, even if Auguste Boenert had received an assignment of the Ziese mortgage and the same was uncanceled, such assignment must inure to the benefit of her grantee, and under no hypothesis or theory could Auguste Boenert again sell the said Ziese note and mortgage and invest the purchaser with any prior or superior lien upon the land, as against another holding a valid lien thereon. The rule applicable in such case is stated in Jones on Mortgages, (sec. 867,) as follows: "When one who has conveyed land with warranty, which is subject to a mortgage, whether made by him or by another, afterwards takes an assignment of such mortgage, he holds it for the benefit of the person to whom he has granted the land, and the mortgage is, in fact, discharged by coming into his hands. Even if he should assign it. to one who in good faith pays full consideration for it, the purchaser would acquire no lien upon the land." And in Pomeroy's Equity Jurisprudence (vol. 2, note to sec. 798,) it is also stated: "If a person who has conveyed land with a covenant warranting against encumbrances afterwards pays off or takes an assignment of a mortgage upon the premises, the same becomes extinguished. He cannot keep it alive as a subsisting lien, for to do so would be a direct violation of his covenant,"—which rule is supported by ample authorities there cited.

Applying the well recognized rules of law that are applicable to the facts appearing in the case at bar, we are of the opinion that the relief prayed for by appellant was properly denied, and being of such opinion on the points already considered, it is not necessary that we discuss the other defenses insisted upon by appellee.

In this case it is not insisted upon as error to have given appellant, Brosseau, the holder of the Ziese mortgage, a second lien, by any other person than appellant himself, who alone assigned errors upon the judgment of the Appellate Court, and whose only contention is that his lien should be first instead of second. We therefore

deem it unnecessary to enter into a review of the authorities as to the right of Brosseau to have a second lien.

The judgment of the Appellate Court will therefore be affirmed.                    *Judgment affirmed.*