## UNITED STATES BOND & MORTGAGE CO. v. KEAHEY *et al.*

No. 5945.    Opinion Filed January 11, 1916.

Rehearing Denied March 7, 1916.

(155 Pac. 557.)

**MORTGAGES—Validity—Right to Attack—Purchaser.** Where one purchases land subject to a mortgage thereon, the land conveyed is effectually charged with the incumbrance to the same effect as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage on the land to secure it; and, under such circumstances, the purchaser will not be permitted to question the validity of the mortgage on the ground that it was void as to his grantor.

(Syllabus by the Court.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by the United States Bond & Mortgage Company, a corporation, against Ida M. Keahey and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Rennie, Hocker & Moore,* for defendants in error.

HARDY, J.   The United States Bond & Mortgage
Company, which will be referred to as plaintiff, brought suit
against Ida M. Keahey, J. J. Hacker, and wife, to recover
on two promissory notes executed by defendant Keahey,
and to foreclose a real estate mortgage given to secure
the same.   There is no controversy as to the material
facts.   The notes were executed by defendant Keahey on
October 15, 1908, to H. A. Kahler, who afterward trans-
ferred the same to the Penn. Mutual Life Insurance Com-
pany, which company later transferred same to plaintiff.
The execution of the notes and mortgage was admitted by
defendant Keahey, while the Hackers defend on the ground
that the mortgage, having been executed by defendant
Keahey while a minor, was void because of the fact that
the lands were her personal allotment, as a member of the
Choctaw tribe of Indians.   Plaintiff, in response to this,
pleaded that defendants Hacker were estopped from ques-
tioning the validity of the mortgage, for the reason that
they purchased the premises subject thereto.   Judgment
was rendered in favor of defendants Hacker and against
plaintiff, and the mortgage sought to be foreclosed was
declared to be void.   The court further found in favor of
plaintiff and against defendant Keahey for the amount of
the notes sued on.   From the order of the court overrul-
ing the motion for new trial, plaintiff prosecutes error.

The principal assignment of error is that the find-
ings and judgment of the court are not sustained by suffi-
cient evidence and are contrary to law.   Several propo-
sitions are argued under this assignment, but the only
one we deem it necessary to consider is whether, under
the evidence, the finding of the court that defendants
Hacker did not purchase the premises subject to the mort-
gage is sustained by the evidence.   This being an equity

case, under the rule in *Shock et al. v. Fish*, 45 Okla. 12, 144 Pac. 584, where it is clearly shown that the finding and decree are against the weight of the evidence, this court will consider the entire record in said case, weigh the evidence, and render such judgment as the trial court should have rendered. The allottee, Ida M. Keahey, prior to the date of the defendant Hacker's deed, sold the land to her father, J. H. Boatright, who had assumed the plaintiff's mortgage and agreed to pay the same. Thereafter Boatright sold to Hacker, but the deed was made direct from Ida M. Keahey to defendant J. J. Hacker, and in the warranty clause of the deed it is warranted that the lands therein described—

"are free, clear, discharged and unincumbered, of and from all former grants, titles, charges, judgments, taxes and incumbrances, of what nature and kind soever, except a mortgage for $1,500.00."

J. H. Boatright testified in reference to the transaction between him and Hacker as follows:

"Q. What, if anything, was agreed to between you and Mr. Hacker as to this $1,500 mortgage on the property? A. I will answer that the best way I know how to answer it. It's like this, when I was trading with Mr. Hacker this farm property for this city property, why I mentioned a $1,500 mortgage that my daughter had placed on the land. Q. That is the mortgage that is being foreclosed in this case? A. That is my understanding, and I told him like this: That the $1,500 mortgage was against it, and I would trade him my equity there in the place for this property here, just even up. * * * Q. I will ask you, Mr. Boatright, if the question came up as to whether he would assume the mortgage or not? * * * A. It was in Mr. Hacker's office at that time we were up there to fix the deed, and the mortgage was mentioned, and also spoken of as void and of no effect, illegal. Q. Why? A.

Because my daughter was not of age, but still insisted that the mortgage be made a note of in the deed in order that I would not be tied up for anything. * * * Q. I will ask you if Mr. Hacker did not ask you to have your daughter sign a deed, not mentioning the mortgage? A. He did. Q. I will ask you if at the time of your trading that Mr. Hacker said that he would not accept the mortgage, but said to put it in, except the mortgage? A. As I remember it he didn't recognize the mortgage as amounting to anything, but I wanted the mortgage mentioned in the deed so that I would be clear. Q. Then the deed was made as you understood the trade to be? A. Yes, sir. I just felt this way: That if the mortgage was all right, the land was good for it, and of course I wanted to be clear from it.

"By the Court: Q. Now, Mr. Boatright, Hacker didn't think the mortgage amounted to anything? A. I don't know whether he did or not, but I didn't want to be liable on the mortgage; that is correct. Q. Now in the event the mortgage had to be paid, who was to pay it? A. Well, I just figured on it this way: That the land was good for the mortgage if it had to be paid. That was my understanding. Q. From whom? A. From the one who owned the land at the time it had to be paid."

The defendant J. J. Hacker testified:

"Q. What difference did it make if you didn't assume the mortgage? A. It was against the land. Q. If you hadn't assumed and agreed to pay the mortgage, they couldn't have held you for it, could they? A. It was on the land. I thought they could have held me. * * * Q. What I am trying to get at is this: You knew that if you didn't assume and agree to pay the mortgage, they could not make you pay it, didn't you? A. I thought that they could collect it off the land. I knew that was the only way they could get it out of me. Q. Then why in writing to them did you not tell them that you never assumed and agreed to pay it, and that they should look to Mr. Boatright? A. Because Mr. Boatright said he didn't

want the responsibility of the loan, and that it was to be on the land."

In addition to this, the defendant Hacker testified that, after purchasing the land, he wrote to the agent of plaintiff, directing that all communications in the future concerning the land be directed to him; and on April 13, 1910, plaintiff mailed defendant J. J. Hacker a statement of interest due at that time, and thereafter said defendant caused a draft in payment of the interest due to be mailed to plaintiff. On the 3d day of September, 1910, defendant J. J. Hacker wrote plaintiff that, while he had received from them letters acknowledging receipt of payment of the interest coupon, he would be better satisfied if he received the canceled coupons, for he presumed that the mortgage had passed into other hands by assignment, and indicating his desire in the future to receive the canceled coupons, or else he would remit direct to the holder of the mortgage indebtedness. In explanation of his payment of the interest and the correspondence above mentioned, he stated that the reason he paid the interest was that plaintiff was threatening to foreclose the mortgage, and he was not clear in his mind at that time whether he was liable for its payment, and was not ready to have same foreclosed, and he paid the interest in order to avoid the foreclosure. From this review of the testimony we think the finding of the court that defendant Hacker did not purchase the premises subject to the plaintiff's mortgage was clearly against the evidence.

There is no controversy that when Ida M. Keahey sold to her father, J. H. Boatright, he assumed the mortgage and agreed to pay it; neither is there any controversy that at the time Boatright sold to Hacker it was the express agreement that Boatright was not to be liable on

the mortgage, nor that the deed recited the incumbrance. In addition to this, the statement of Boatright that he traded his equity of redemption in the mortgaged premises for the property received in exchange therefor is undisputed; and a circumstance strongly corroborating this statement is that the property received from Hacker in exchange for the mortgaged premises was valued at $4,-500, while much testimony that is not contradicted shows the value of the mortgaged property to be $6,000 or more. Defendant Hacker's only contention is that he was to pay the mortgage if it was a valid one, but that if he could avoid its payment on the ground of its being illegal, he intended at all times to do so. This may have been his intention, but we think that the court was not justified, under the evidence, in finding that there was no agreement upon the part of Hacker to purchase subject to the mortgage. When one purchases land subject to a mortgage thereon, the land conveyed is effectually charged with the incumbrance to the same effect as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage on the land to secure it, and under such circumstances the purchaser is not allowed to defend against the mortgage he has assumed to pay on the ground that it is not valid against his grantor, for, having purchased the premises subject to the mortgage, he is precluded from assailing its validity. *Jones et al. v. Perkins,* 43 Okla. 734, 144 Pac. 183; 1 Jones on Mortgages, secs. 336, 744. Having purchased the equity of redemption in the mortgaged premises and agreed to take the land subject to the mortgage, the amount of the mortgage indebtedness entered into the consideration therefor; and, if he were permitted to defeat the mortgage on the ground of its invalidity, he would thus defraud his grantor and

the mortgagee. This would be a speculation upon the validity of a contract from which he had suffered no harm, and would permit him to withhold money to which he has no right, and without any consideration. In theory he has deducted the amount of the mortgage from the purchase price, and it would clearly be inequitable to allow him to urge the invalidity of the mortgage, and retain the amount thereof, which was in effect furnished by his grantor, and not apply it to the discharge of the mortgage. *Selby v. Sanford,* 7 Kan. App. 781, 54 Pac. 17; *Green v. Houston,* 22 Kan. 38; *Johnson v. Thompson,* 129 Mass. 398; *Foy v. Armstrong,* 113 Iowa, 629. 85 N. W. 753; *Trusdell v. Dowden,* 47 N. J. Eq. 396, 20 Atl. 972; *Fuller & Co. v. Hunt,* 48 Iowa, 163; *Brosseau v. Lowy,* 209 Ill. 405, 70 N. E. 901; *Hiner v. Whitlow,* 66 Ark. 121, 49 S. W. 353, 74 Am. St. Rep. 74; *Gerdine v. Menage,* 41 Minn. 417, 43 N. W. 91; *Gregory v. Arms,* 48 Ind. App. 562, 96 N. E. 196; *Batts v. Middlesex Banking Co.,* 26 Tex. Civ. App. 515, 63 S. W. 1046.

These views render unnecessary any consideration of the other questions urged.

The judgment is therefore reversed, and the cause remanded to the trial court, with instructions to render judgment in favor of plaintiff, decreeing a foreclosure of its mortgage upon the premises embraced therein.

All the Justices concur.