Woodburn v. Harvey.

No. 22,542.

E. D. WOODBURN, *Appellee,* v. DORA E. HARVEY, *Appellee,* and B. C. HAMILTON, *Appellant.*

SYLLABUS BY THE COURT.

1. DEED—*Verbal Assumption of Mortgage by Grantee.* Where mortgaged property is conveyed and the deed contains no recital that the grantee assumes and agrees to pay the encumbrance, parol evidence is competent and admissible to prove such agreement; and when thus established, the grantee is bound thereby.

2. SAME—*Assumption of Mortgage by Grantee—Parol Evidence* The evidence to prove a verbal agreement by a grantee of mortgaged property that he would assume and pay the mortgage, examined, and held to meet the requirement of the rule that the proof of such parol obligation must be clear and convincing.

3. SAME—*Pleadings—Issues Properly Raised.* The pleadings sufficiently raised the issue involved to require the overruling of appellant's objection to the introduction of evidence.

Appeal from Jackson district court; THOMAS A. FAIRCHILD, judge *pro tem.* Opinion filed June 5, 1920. Affirmed.

*J. B. Larimer,* and *W. Glenn Hamilton,* both of Topeka, for the appellant.

*Lee Monroe, Guy L. Hursh, E. R. Sloan,* and *C. M. Monroe.* all of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This lawsuit involves the question of primary and secondary liabilities between the defendants in a foreclosure suit, with which the successful plaintiff is not concerned.

The defendant, Dora E. Harvey, owned a house and lot in Holton. She desired to procure a homestead in Colorado. She had a friend, B. C. Hamilton, in whom she fully confided, and he undertook to aid her and to guard her interest in that project. With his help and approval, she made a deal with one Ptomey whereby she obtained a relinquishment of a Colorado homestead, in consideration of which she agreed to convey her Holton property to Ptomey, but before conveying it to him she was to mortgage the Holton property and give part of the money borrowed thereon to Ptomey and keep part of it herself, and as she did not care to trust to strangers it was also agreed that her friend Hamilton should take the title to the Holton property after it was mortgaged.

The arrangements leading up to this agreement were made in a bank in Colorado, and this lawsuit arises on the question whether the agreement covered the matter of the assumption of the mortgage debt by Mrs. Harvey's grantees. After receiving the conveyance Hamilton paid half the semiannual interest on the mortgage on two occasions, and made inquiry of the mortgagee as to whether Ptomey was likewise paying half of it, and on a subsequent occasion Hamilton paid all the semiannual interest then due.

Later there was default; the mortgagee brought suit to foreclose, Mrs. Harvey and Hamilton being the defendants. Mrs. Harvey pleaded that her codefendant assumed and agreed to pay the mortgage, and that he was primarily liable. Hamilton admitted that he acquired the property after the execution of the mortgage, but denied that he assumed and agreed to pay it.

Woodburn v. Harvey.

On this joinder of issues, a jury was waived and the cause was tried by the court. Judgment was entered for plaintiff; and the court made a finding—

"The court further finds that the allegations and averments made and contained in the answer of Dora E. Harvey with reference to the assumption and agreement to pay said note and mortgage are true and that by reason thereof the said B. C. Hamilton is primarily liable on said indebtedness and the defendant, Dora E. Harvey is liable only as surety."

Part of the decree reads:

"It is further considered, ordered, adjudged and decreed that if at any time the defendant, Dora E. Harvey, is compelled to pay this judgment or any part thereof, she shall have a judgment over against her codefendant, B. C. Hamilton, for the amount so paid by her with interest thereon at the rate herein provided."

The defendant Hamilton assigns various errors which will be noted. His chief complaint relates to the admission of incompetent and prejudicial evidence. The deed conveying the Holton property from Mrs. Harvey to Hamilton merely recited that the conveyance was subject to the mortgage incumbrance. It did not recite that the grantees assumed and agreed to pay the mortgage. Mrs. Harvey was permitted to testify concerning the negotiations leading up to and involved in the transaction.

"Q. What, if anything was said in that conversation about whether Hamilton and Ptomey were to assume this mortgage? . . . A. Mr. Hamilton said they would arrange it and have the banker do the business and see it was done straight.

"Q. What was said as to whether they would agree to pay this mortgage? A. They said they accepted the place subject to the mortgage as soon as I could put the mortgage on as I had not done so at that time.

"Q. What did they say as to who was to pay the mortgage, whether you were to pay it or they? A. The banker read the deed after he made it out and I said, 'will I be responsible for that' and he said 'no, they take the responsibility.' . . .

"Q. Was anything said at that time about anything else to be put in the deed? . . . A. It was supposed to be finished up after I had the mortgage on the place as there was none then. The deed was made out subject to that mortgage but the deed does not show anything there.

"Q. Did Mr. Hamilton in your negotiations out there make any statements wherein he said anything about whether he would or would not assume this mortgage? . . . A. So far as I remember just to the effect he as my friend would see everything went perfectly straight and I would have no more responsibility.

"Q. What did Ptomey say about it? . . . A. That's what they were to do.

"Q. Did he say so? A. Yes.

"Q. Did Hamilton say they would do that? A. The deed was made, a joint deed.

"Q. What did Hamilton say, did he tell you he would see the mortgage was paid, that he would pay it? A. I cannot say he said he would pay, but said he would see I was fairly dealt with and that they assumed the mortgage.

"Q. Hamilton said that, did he? A. Yes."

Was this evidence competent? Appellant says it was not pleaded that there was a mistake in the deed, nor was there any allegation or claim of fraud; and he relies on the rule that parol agreements made prior to or contemporaneous with the execution of a written instrument are inadmissible to alter or contradict the terms of that instrument. Undeniably that is a sound rule, and some of the cases cited by appellant seem to have applied it to controversies not easily distinguishable from the case at bar.

On the other hand, however, it must be said that the trial court had ample authority for his ruling that there can be an enforceable parol obligation by a purchaser of mortgaged property to assume and pay the mortgage.

In *Fisher v. Spillman,* 85 Kan. 552, 118 Pac. 65, which was a case where the mortgagor of property had sold it to a person who orally agreed to assume and pay the mortgage debt, this court said:

"It has been repeatedly held that parol agreements of this character need not be in writing; that a parol agreement by the purchaser of property to pay the purchase price to a third person in payment of a debt due from his vendor is not within the statute of frauds. (*Mfg. Co. v. Burrows,* 40 Kan. 361, 19 Pac. 809; *Neiswanger v. McClellan,* 45 Kan. 599, 26 Pac. 18.) A promise made to a debtor by a third person to pay his debt is not a promise to answer for the debt of another within the statute of frauds and need not be in writing. (*Center v. McQuesten,* 18 Kan. 476.)" (p. 555.)

In *Smith v. Kibbe,* 104 Kan. 159, 163, 178 Pac. 427, it was said:

"Although the assumption of the debt was not expressly mentioned in the deed executed by Haney to them, the written contract executed in pursuance of a verbal agreement contained an express promise to assume and pay the debt. This promise and assumption was just as binding as if it had constituted a provision of the deed. To be valid it was not essential that the agreement be a part of the deed, nor that the promisor should have signed any writing."

In *Wilson v. King*, 23 N. J. Eq., 150, the first paragraph of the syllabus reads:

"A parol agreement by the grantee, at the time of taking a deed, that he would assume a mortgage upon the property as part of the consideration, will be enforced in equity. A covenant in the deed that the premises are free from encumbrances, or any other covenant, will not estop the assignee of such mortgage from recovering on such undertaking."

In 1 Jones on Mortgages, section 750, it is said:

"Even a verbal promise by a purchaser to assume and pay a mortgage is valid, and may be enforced in equity not only by the grantor but by the holder of the mortgage. . . .

"The assumption of the payment may be proved by parol evidence, although the deed to the purchaser contains covenants of warranty, and makes no mention of the mortgage, or is simply subject to it."

In *Brosseau v. Lowy*, 209 Ill. 405, the syllabus, in part, reads:

"1. If the amount of a prior mortgage is to be paid by a grantee of land as part of the purchase price, he is held to have assumed the debt, and express words to that effect in the deed are unnecessary.

"3. The fact that a mortgage debt upon the property was assumed by the purchaser as part of the consideration may be shown by parol, although the deed contains full covenants of warranty and makes no reference to the mortgage."

In the body of the opinion, the Illinois court said:

"The appellant, however, contends, that inasmuch as Ziese conveyed his equity to Auguste Boenert 'by a warranty deed with full covenants, and nothing was said about the payment of encumbrances,' oral evidence showing that the grantee, Auguste Boenert, assumed the encumbrance was incompetent. The rule of this court is against this contention. In *Drury v. Holden*, supra, it is stated (p. 137): 'It is said the deed from Daggett to Drury contained full covenants of warranty, to which there was no exception; that thereby Drury's grantor covenanted that he would warrant and defend the lots conveyed, against the holders of all encumbrances. The covenants extended only to what was conveyed, and that was not the lots absolutely, but the lots subject to the encumbrance.' And on page 138: 'It is objected that oral evidence was inadmissible to show that the amount of the encumbrances was deducted from the amount of the purchase price, and allowed to Drury. The evidence being in regard to what constituted the consideration of the deed to Drury and that the amount of the encumbrances was included in and formed a part of the consideration, was clearly competent, under the rule which permits parol evidence upon such subject of the consideration of a deed.' In *Lloyd v Sandusky*, 203 Ill. 621, after referring with approval to the case above quoted, we said (p. 631): 'Whenever the question has come before this court it has been uniformly held that the statement of the amount

of the consideration and acknowledgment of its receipt in the deed were formal recitals, their only operation, in law, being to prevent a resulting trust, and that they might be explained, varied and contradicted by parol evidence.'" (p. 411.)

(See, also, 27 Cyc. 1344, 1345.)

With the competency of the foregoing quoted evidence thus established, the appellant's next contention, that the assumption of the mortgage by Hamilton was not proved, needs little discussion. Not only did Mrs. Harvey so testify, but her mother likewise testified:

"Q. What, if anything, was said during these negotiations there by Mr. Hamilton with reference to assuming and agreeing to pay this mortgage they wanted Mrs. Harvey to place on the property here?

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. What was said?  A. They said they expected to pay the mortgage.

"Q. When the banker asked if they expected to pay the mortgage they said they would?  A. Yes; that was the understanding.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Make that statement as near as you remember.  A. I told you they said they would put it in when she sent on the mortgage.  .  .  .

"Q. Did Mr. Hamilton assist in this transaction where Mrs. Harvey traded for Colorado land?  A. I think he did.

"Q. Do you know?  A. We found out afterward; we did not know at the time.

"Q. Was he present when you were out there looking at the land? A. Yes; went with us part of the time; we thought he was our friend."

A daughter of Mrs. Harvey also testified that on the way back from Colorado she had a conversation with Hamilton:

"Q. What statements, if any, did Hamilton make about whether he agreed to pay the mortgage your mother had put on the place?  .  .  . A. Mentioned trading off the place for a car and I asked what that had to do with the place, and he said he got one-half for getting the folks out there and keeping them; and I asked what they were going to do about the mortgage, and he said they assumed it; it was to be paid by them."

The court feels bound to hold that Hamilton's agreement to pay the mortgage was clearly established by the evidence to which the trial court manifestly gave full credence. In 27 Cyc. 1348, it is said:

"If the deed contains no such clause of covenant, but reliance is placed on a verbal contract to pay the mortgage, it may be established by parol evidence, which, however, must be clear and convincing. The fact that the grantee paid interest or a part of the principal of the debt, or negotiated with the mortgagee in regard to its payment, is pertinent."

Another contention of appellant is that the court erred in overruling his objection to the introduction of evidence on the ground that Mrs. Harvey's pleadings had stated no cause of action against him. She pleaded that Hamilton purchased the property from her and that he assumed and agreed to pay the mortgage, and prayed that he be held primarily liable therefor. Hamilton's answer traversed those allegations. The issue thus raised was virtually all that was in controversy in the lawsuit. Hamilton's objection to the introduction of evidence to determine that issue was properly overruled.

The judgment is affirmed.