No. 27,912.

THE CITIZENS STATE BANK, of Kensington, *Appellee*, v. J. F. WISE-
MAN et al., *Defendants;* J. BAIR, and JANE L. BAIR, Interpleader,
*Appellants.*

(265 Pac. 39.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Assumption of Mortgage by Grantee—Evidence.* In an ac-
tion to enforce the obligation of a purchaser of real estate by his acceptance
of a deed reciting that the property was conveyed subject to mortgages
which the grantee assumed and agreed to pay, the record examined and
held to show ample evidence to sustain the judgment against the grantee.

2. APPEAL AND ERROR—*Review Findings Based on Conflicting Evidence.* The
question whether certain lands attached to secure satisfaction of the gran-
tee's obligation were transferred to his wife in good faith, as her property,
although title had been taken in his name, or whether such transfer was
fraudulently made to put the property beyond the reach of the plaintiff
mortgagee, was a question of fact, on which there was ample evidence to
support the trial court's findings thereon, and its judgment is conclusive on
appeal.

Appeal from Phillips district court; EDWARD E. KITE, judge. Opinion filed
March 10, 1928. Affirmed.

*W. A. Barron,* of Phillipsburg, and *Roland Max Anderson,* of Lincoln, Neb.,
for the appellants.

*A. W. Relihan, T. D. Relihan* and *J. T. Reed,* all of Smith Center, for the
appellee.

The opinion of the court was delivered by

DAWSON, J.: This lawsuit was based on the obligation of a pur-
chaser of real estate by his acceptance of a deed reciting that the
property was conveyed subject to mortgages which the grantee as-
sumed and agreed to pay.

It appears that prior to August, 1923, three persons named Wise-
man owned 640 acres of land in Phillips county. The land was sub-
ject to a first mortgage for $21,500 held by a trust company, and
a second mortgage for $16,200 held by the Citizens State Bank, of
Kensington, plaintiff herein.

On August 29, 1923, the Wisemans traded this land subject to its
incumbrances to defendant J. Bair for a quarter section of Sherman
county land.

Appeal and Error, 4 C. J. p. 877 n. 80; 2 R. C. L. 194. Mortgages, 41 C. J.
p. 743 n. 90; 19 R. C. L. 374.

On May 26, 1925, the Citizens State Bank brought suit against the Wisemans on their $16,200 indebtedness and to foreclose its second mortgage. The defendant J. Bair was made a party defendant because of his assumption of the mortgage as stated in the deed of August 29, 1923, conveying the Wiseman lands to him.

Bair had long been a resident of Phillips county and had done considerable trading in lands, but for some time prior to his acquisition of the Wiseman lands he had been living in California. His wife still resided on one of several tracts of farming land standing in his name in Phillips county. When the bank commenced its action to foreclose its mortgage on the Wiseman lands, it caused an attachment to issue against 400 acres of Bair's Phillips county lands. This brought Bair's wife, Jane L. Bair, into this lawsuit as interpleader. She alleged that part of this land was the family homestead; that all of it had always been her property notwithstanding the nominal title had been taken in her husband's name; and that prior to the attachment, on January 17, 1924, her husband had executed and delivered to her a deed conveying to her all the Phillips county land attached at the instance of the plaintiff.

On his own behalf Bair answered alleging that he never assumed the mortgage indebtedness on the Wiseman lands; that the president of the Citizens State Bank, J. H. Ball, was a trusted friend and business confidante, with whose assistance he had often handled real estate transactions; that defendant had grown old and his eyesight was poor, and that he had removed to California and had retired from business; that while on a visit to Kansas, Ball had induced him to take and hold title to the Wiseman lands for the convenience of the bank, and Ball had assured him he would be at no expense except for interest on the first mortgage and the taxes, and that the rents and profits of the lands would be sufficient to cover that expenditure, and that the bank would charge no interest on its second mortgage for two years; and that Ball without authority had caused the assumption clause concerning the mortgages to be incorporated in the Wiseman deed.

The pleadings of the various parties developed their respective positions and contentions. The evidence adduced by the litigants was voluminous. That of the intervener Jane L. Bair tended to show that a considerable share of Bair's accumulations of property during his forty years' sojourn in Kansas had their inception in various sums of money which his wife had gotten from her parents.

Bair's evidence was that he had never agreed to assume and pay the mortgages on the Wiseman lands, and that he did not knowingly sign a preliminary contract to that effect. On behalf of the plaintiff bank it was shown that its president, Ball, had learned of the negotiations under consideration between the Wisemans and Bair and had helped those negotiations along because of the Wisemans' heavy indebtedness to the bank; that Ball drew the contract and deed; that both contract and deed were read to Bair and his adult son; that the deed from the Wisemans was delivered to Bair, and Bair's deed conveying the Sherman county land was given to Ball for delivery to the Wisemans. Ball also testified:

"I made no representations to the Bairs as to the value of the Wiseman land; I made no representations as to the taxes or interest due or not due on the mortgages. I made no agreement to take over the Wiseman land or to return $4,000, the value of the Cheyenne [Sherman] county land; I never had any conversation with J. Bair or Aaron about guaranteeing to take over the land at the end of two years. J. Bair never told me repeatedly or at all that he did not want to buy any more Kansas land."

There was some written evidence tending to support Ball's version of his part in the Wiseman-Bair land trade. Ball agreed that if Bair would make the deal with the Wisemans the Citizens State Bank would not charge any interest on its second mortgage for two years. At first this was an oral agreement, but later, on January 16, 1924, at the request of Bair it was reduced to writing and signed by Ball and Bair. That written contract recited Bair's obligation to the Wisemans to pay their indebtedness to the bank.

We have mentioned the favorable nature of the evidence tending to establish the intervener's claim to the lands included in the attachment proceedings. It mischanced, however, that certain incidents and a certain line of cross-examination of the intervener and one of her sons tended strongly to discredit her testimony and reacted in favor of the bank. After receiving the deed of January 17, 1924, from her husband, in which the named consideration was "one dollar and love and affection," Jane L. Bair executed two mortgages purporting to encumber 240 acres of the land for $9,000 and the remainder for $11,000. The designated mortgagee was "E. A. Smith," who came from California in company with intervener's son and who carried the entire sum of $20,000 in cash on his person. Later the intervener's son paid off Smith and took an assignment of the mortgages. This son, too, used no checks, drafts or money orders, but had carried the money on his person for months. The

Citizens State Bank v. Wiseman.

intervener herself was sorely beset to explain what she had done with all this money. She testified she received $9,000 and used it for whatever she happened to want, and that she had $100 left. Her son endeavored to straighten out this remarkable story. He testified:

"I have no property in California; I don't do business with any bank; I have no money there now. I took over these two mortgages mother gave to Smith, one for $9,000 and one for $11,000.

"I did not deliver to mother the $9,000 in cash. Smith gave mother $1,500 in cash and I got the $11,000 and the balance of the $9,000. . . .

"Q. Where did you keep this money all of that time—don't laugh about it—where did you keep it? A. Kept it in my pocket.

"Q. During all of this time—this $20,000? A. Yes, sir.

"I asked this man Smith to come to Kansas and make this loan. . . .

"Q. What was his place of business? A. Wherever he happened to be. . . .

"Q. You claim he was lugging that $15,000 or $20,000 around on his person for a loan out here in Kansas? A. Yes, sir."

The trial court made extended findings of fact and conclusion of law, to the general effect that the assumption clause in the Wiseman deed to J. Bair was fully understood, read and considered by J. Bair, and by his son and also by the intervener, Jane L. Bair, and that it was valid and binding; that the deed of Bair's lands to Jane (and another tract of Sherman county land to a son) was executed without consideration and with the intent to defraud his creditors, and to place those lands beyond their reach, and particularly beyond the reach of the plaintiff.

The trial court set aside the attachment on two eighty-acre tracts divided by a section line on the ground that they constituted Jane's homestead and sustained the attachment on the remaining 240 acres. Judgment was entered accordingly. A motion for a new trial was pending when the presiding judge, Hon. Willard Simmons, retired from office, and was heard and considered at length by his successor, Hon. Edward E. Kite. In overruling the motion, the court said:

"The interpleader, Jane L. Bair, makes a very strong showing as to her ownership of the land involved in this controversy, that is, the four hundred acres of the Bair land in controversy, showing recognition of her ownership by members of the family and testimony of other witnesses outside of the family who heard statements made by her and her husband, J. Bair. If the deed from J. Bair to Jane L. Bair had been supported by this testimony, and had stood upon that alone, and the present incumbent of the office had tried the case, he might have been inclined to follow this testimony and hold the

conveyance good. But the subsequent actions of Jane L. Bair in giving the two mortgages to Smith, and then the assignment of Smith to Skinner, and all of the actions and circumstances surrounding the same, makes a very bad feature and one that cannot readily be believed. Evidently the court which tried the case considered all of these subsequent conveyances as an attempt to encumber the property in bad faith, and that consequently the deed from J. Bair to Jane L. Bair was also in bad faith. This testimony throws a cloud over the whole defense, or case of J. Bair and Jane L. Bair."

The defendant and the intervener assign a dozen errors, none of which are specifically pressed on our attention in their brief. The argument is directed to matters of prime concern in the trial court, but of little consequence on appeal. It is useless to argue to this court the evidence which tended to show that the attached lands were acquired by J. Bair at various times in the last forty years with varying sums of a few hundred dollars which the intervener had derived from her parents and otherwise. And it is similarly useless to urge on this court that the attached lands had always belonged to intervener, that her husband was only the nominal titleholder, and that the transfer of title in January, 1924, only gave. effect to an agreement of the parties for many years' standing. If the trial court had believed that evidence this court would have been bound thereby. But this court cannot meddle with a judgment because of some plausible evidence which the trial court disbelieved. (*Agricultural Ins. Co. v. Ætna. Ins. Co.*, 119 Kan. 452, 457-459, 239 Pac. 974; *Bortnick v. Cudahy Packing Co.*, 119 Kan. 864, 866, 867, 241 Pac. 442.) In *Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 136, 234 Pac. 77, where appellant sought to impress this court with a version of the evidence which had received no credence in the court below, it was said:

"One trouble with this and other features of defendant's argument is the assumption that what its witnesses testified to must be accepted by this court as true, which, of course, is altogether incorrect." (p. 136.)

And the same principle of appellate review governs that phase of this case so far as concerns J. Bair. It is useless to reproduce the evidence pro and con on which the trial court found in favor of the bank. Indeed, it is not contended that there was no evidence to show that Bair unwittingly accepted a deed from the Wisemans containing the mortgage assumption clause. There was substantial evidence that he did know of that clause, that the Wisemans would not have parted with their Phillips county lands in exchange for

a quarter section of western land but for defendant's assumption of the bank's mortgage, and the circumstances lend color to that view of the transaction. That a mortgage assumption clause in a deed is binding on the grantee who accepts the deed is not contested. On that subject, see *Bank v. Bales*, 101 Kan. 100, 165 Pac. 843, and citations; 41 C. J. 743 *et seq.;* 19 R. C. L. 374. Such liability of a grantee may even be established by parol evidence, *Woodburn v. Harvey*, 107 Kan. 57, 190 Pac. 620, and citations.

A painstaking perusal of the record and briefs discloses nothing to justify a reversal of the judgment, and it is therefore affirmed.