No. 24,927.

## Jonah Hines, *Appellee,* v. Roberts Brothers, a Copartnership, etc., *Appellants.*

### SYLLABUS BY THE COURT.

1. Damages—*Breach of Contract—Special Questions Relating to Issues Not Pleaded Properly Refused.* In an action to recover damages for failing to perform a contract, it is not error to refuse to submit to a jury a requested special question which asks for an answer concerning either payment, or compromise and settlement, or accord and satisfaction of the claim sued on, where neither of those defenses has been pleaded.

2. Same—*Oral Promise by Creditor to Accept Property of Debtor in Trust Was Enforceable.* A promise to a debtor by his creditor, who accepts in trust property from the debtor to be used in paying debts of the debtor to the creditor and to others, is enforceable at the suit of the debtor against the creditor and is not within the statue of frauds.

3. Same—*Evidence—An Unsigned Written Instrument Properly Admitted.* It is not error to submit in evidence an unsigned written instrument, nor to permit that instrument to be taken to the jury room, where there is evidence which tends to show that the instrument contains the terms of an oral contract which is the subject of the action.

4. Same—*Competent Evidence to Show Depreciation in Value of a Restaurant Business.* Evidence to show the depreciation in the value of a restaurant business occasioned by its standing idle for a period of time includes the damages sustained by injury to the good will of that business.

Appeal from Morton district court; Charles E. Vance, judge. Opinion filed February 7, 1925. Affirmed.

*G. H. Terrill,* of Elkhart, and *J. W. Davis,* of Greensburg, for the appellants.
*G. L. Light,* and *F. O. Rindom,* both of Liberal, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The defendants appeal from a judgment against them for damages for the violation of an oral contract entered into between them and the plaintiff.

The plaintiff ran a restaurant in Elkhart, became financially involved, and determined to quit the business. The defendants were his principal creditors. He alleged, and there was evidence which tended to prove, that he entered into an oral contract with them by which he turned his business over to them to be operated by them, they to pay the running expenses out of the proceeds of the business and apply the remainder in payment of the debts of the plain-

tiff, after which the business or the proceeds of a sale thereof was to be returned to the plaintiff; that defendants took charge of the business, operated the same for ten days, then brought an action to recover from the plaintiff the amount of the indebtedness due them, and caused a writ of attachment to be issued and levied on the stock of goods, furniture and fixtures in the restaurant; that sale under the attachment was enjoined by the plaintiff; that the defendants refused to carry out the contract, and that the plaintiff was damaged thereby. The answer was a general denial of the allegations of the petition. No affirmative defense was pleaded.

The defendants urge that—

"The court erred in overruling the demurrer to the petition.

"The court erred in overruling the motion to strike the amended petition from the files.

"The court erred in refusing to give instructions one, three and four, asked by defendants.

"The court erred in refusing to submit to the jury questions of fact requested by defendants.

"The court erred in its instructions to the jury.

"The court erred in admitting plaintiff's exhibit A, and in refusing to withdraw it from the jury, and in permitting it to be taken to the jury room.

"The court erred in overruling the demurrer to plaintiff's evidence.

"The court erred in overruling the motion for a new trial."

1. The defendants complain that the following special questions requested by them were not submitted to the jury:

"1. How much, if anything, do you allow plaintiff because of the attachment issued in this case?

"2.. What items of damage do you allow plaintiff in this case? State what such items were for.

"3. What was the market value of the plaintiff's furniture and fixtures in the restaurant on or about the 29th of December, 1920?

"4. Did the plaintiff and the defendants have a settlement at or immediately after the plaintiff sold his property?

"5. Who ran the restaurant from the 29th of December, 1920, until the 10th of January, 1921?"

The court submitted to the jury special questions which were answered as follows:

"1. What was the value of the furniture, fixtures and supplies, together with the good will, if any, of the business on December 30, 1920? Answer: $1,149.50.

"2. What items of damage do you allow plaintiff in this case? Answer: $50 for good will and $100 difference in what Mr. Hines received and what he offered to take.

"3. What was the market value of plaintiff's furniture and fixtures in the restaurant on or about the 29th day of December, 1920? Answer: $1,100."

On the statement of the case to the jury the defendants, as a matter of defense, set up a settlement with the plaintiff of all matters in dispute between them. Evidence was introduced tending to prove such a settlement. Instructions requested by the defendants were refused, but no instruction was asked concerning the effect of a settlement between the plaintiff and the defendants.

The matter embraced in the first question requested by the defendants was eliminated by the instructions to the jury. The matters embraced in the second and third questions requested were submitted by the court and answered by the jury. The fifth question requested might have been submitted, but the failure to submit it is not sufficient to warrant reversal or modification of the judgment. This leaves the fourth question for discussion. It embodied a material proposition if a settlement had been pleaded in the answer. Such a settlement had been stated to the jury, and evidence had been introduced thereon. No instruction was requested on that matter. The court may have concluded that because a settlement had not been pleaded as a defense, he would not submit the question to the jury, neither in the instructions nor in the special questions. There had been no request to amend the answer.

In 12 C. J. 362 the following language is used:

"It is better practice to require defendant to plead a compromise agreement relied on to defeat the action, leaving plaintiff to reply by way of confession and avoidance if desired, than to have it alleged in the complaint. The cases are not agreed on the question whether a compromise may be shown under the general issue. In some jurisdictions the defense may be so raised, but in others it must be specifically averred, and evidence thereof is not admissible under the general issue, although if evidence to establish the defense is given under the general issue without objection it may be considered by the court."

This question has been settled by this court in *Roniger v. Mc-Intosh,* 91 Kan. 368, 137 Pac. 792, where the court said:

"Settlement of a debt is the same as payment, and where it is relied upon as a defense it must be properly pleaded. Proof of settlement is not admissible under a general denial."

In the same case, on page 371, the court said:

"We think the court was right in its first ruling that a settlement of the matters could only be shown provided it was properly pleaded. Bouvier defines 'settlement' as the same thing as 'payment.' [Citations omitted.] It is the general rule that proof of payment can only be made when the issue is

presented by proper pleadings, and that it is never admissible under a general denial."

If it be contended that this matter constituted an accord and satisfaction, the rule still prevails that it must be pleaded. 1 Encyc. Pl. & Pr. 74 says:

"At common law, accord and satisfaction might have been given in evidence under the plea of nonassumpsit; but by Hilary Rules (4 Will. 4) the matter had to be pleaded specially.

"The American code practice requires that all matter of accord and satisfaction shall be pleaded."

1 C. J. 573 uses the following language:

"In those states which have adopted the code system of pleading accord and satisfaction must in all cases be pleaded specially."

We quote further from 1 R. C. L. 202, as follows:

"As a general rule, the defense of accord and satisfaction must be specially pleaded; it cannot be set up under the general issue or plea of not guilty."

If a request had been made to amend the answer, even at the close of the introduction of the evidence, the question presented by the defendants would be difficult of solution, except by reversing the judgment, but that request was not made. If the defendants chose not to ask an amendment of the answer, the judgment should not be reversed by now considering the answer as amended.

2. The defendants requested the following instruction:

"You are instructed that in order to render the defendants liable to plaintiff upon any promise to pay debts owing by the plaintiff, such promise must have been made in writing, and as in this case the plaintiff admits that the promise in question to pay his debts was merely oral, you are therefore instructed not to consider such promise to pay plaintiff's debts."

It was not given. Was it error to refuse to give that instruction? This, of course, turns on the application of the statute of frauds. Section 33-106 of the Revised Statutes, in part, reads:

"No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

In *Center v. McQuesten*, 18 Kan. 476, the following language was used in the syllabus:

"A promise made to a debtor, for a valuable consideration, to pay his debt to a third person is not a promise to answer for the debt of another person,

within the statute of frauds, which applies only to promises made to a creditor; and such a promise made to the debtor need not be in writing."

That rule is supported by *Harrison v. Simpson*, 17 Kan. 508; *Patton v. Mills*, 21 Kan. 163; *Mfg. Co. v. Burrows*, 40 Kan. 361, 19 Pac. 809; *Fisher v. Spillman*, 85 Kan. 552, 118 Pac. 65; and *Woodburn v. Harvey*, 107 Kan. 57, 190 Pac. 620.

27 C. J. 140 uses the following language:

"An oral promise to discharge the debt of another, if made to the debtor himself, is not within the statute of frauds; the statute applies only to oral promises made to a person to whom another is answerable."

The contract sued on was not within the statute of frauds.

3. The defendants argue that the judgment should be reversed because an unsigned written instrument purporting to be the contract between the plaintiff and the defendants was introduced in evidence and was permitted to be taken to the jury room while the jury was deliberating. There was evidence which tended to show that the written instrument stated the terms of the contract. It was not error to introduce the document in evidence, because it was a memorandum of the purported terms of the contract that was made between the parties to this action. As such memorandum it was admissible, and it was not error to permit the jury to take it to the jury room.

4. The court instructed the jury as follows:

"4. You are further instructed that if you find for the plaintiff the measure of the plaintiff's recovery will be the difference, if any, between the fair and reasonable market value of the fixtures at the time the same were returned to the plaintiff and sold by him, together with the good will of the business, if any, at that time, and what the said fixtures, together with such good will, if any, would have been fairly and reasonably worth at that time and place had the restaurant been kept open and running, and if you should find for the plaintiff you should specify in your verdict the amount the plaintiff is entitled to recover."

The defendants say that the instruction was erroneous because nothing was said in the petition about good will and there was no evidence concerning that matter.

There was evidence which tended to show that after the defendants had operated the business for about ten days they closed the place and it remained idle until after it had been sold by the plaintiff. There was evidence which tended to show that the business when the plaintiff turned it over to the defendants was worth $1,800,

and that the depreciation of the value of the business caused by being left idle would be about 50 per cent.

2 Bouvier's Law Dictionary 1360, defines good will as follows:

"The benefit which arises from the establishment of a particular trade or occupation."

2 Words and Phrases, second series, 762, three times defines good will, in substance, as the probability that old customers will resort to the old place to transact their business.

Webster defines good will as follows:

"The custom of any trade or business; the favor or advantage in the way of custom which a business has acquired beyond the mere value of what it sells, whether due to the personality of those conducting it, the nature of its location, its reputation for skill, promptitude, etc., or any other circumstance incidental to the business and tending to make it permanent."

Good will, as defined by these authorities, necessarily is damaged when the business with which it is connected stands idle. The evidence to show the damages sustained by the plaintiff included loss occasioned by the restaurant being closed. That was part of the damage which the plaintiff by his petition sought to recover in this action. It cannot be successfully contended—it is not contended—that good will is not a proper element of damages in an action of this character.

The court properly instructed the jury that it might take into consideration the element of good will in estimating the damages. If the defendants had desired a definition of the term, it was incumbent on them to request that such a definition be given. That was not done.

The amount allowed under the head of good will was small. If the plaintiff was entitled to recover, $50, the amount allowed by the jury for damages to good will, was very reasonable. So far as this question is concerned, substantial justice seems to have been done. There was no reversible error in the instruction.

These matters dispose of the principal contentions of the defendants. Responding specifically to other matters complained of, but which do not seem to have sufficient merit to warrant further discussion, the court holds that the petition stated a cause of action good as against a demurrer; that the amended petition did not set up a different cause of action, for which reason the motion to strike the amended petition from the files was properly denied; that it was not error to overrule the demurrer to the evidence of the plain-

tiff; that the court in the instructions given stated in detail the only
conditions under which the plaintiff could recover, which instruc-
tion impliedly, although not directly, stated that if the conditions
contended for by the defendants existed, the plaintiff could not
recover, and therefore it was not necessary to give the instructions
requested; and that the order overruling the motion for a new
trial was not erroneous.

The judgment is affirmed.

HARVEY, J., not sitting.