Note.—See under (1) 37 Cyc. p. 1357. (2) 37 Cyc. p. 1357. (3) 37 Cyc. p. 1441. (4) 37 Cyc. p. 1441. (5) 37 Cyc. p. 1388.

---

### HALSELL v. FIRST NATIONAL BANK OF COWETA.

No. 14316—Opinion Filed April 7, 1925.

1. Landlord and Tenant — "Tenant" and "Cropper" Distinguished — Validity of Chattel Mortgage by Tenant — Action by Mortgagee Against Landlord for Conversion.

The difference between a cropper and a tenant is that the cropper is a hired hand paid for his labor with a share of the crop he works to make and harvest. He has no exclusive right to possession and no estate in the land nor in the crop till the landowner assigns him a share. The tenant has exclusive right to possession of the lands he cultivates and an estate in the same for the term of his contract, and consequently he has a right of property in the crop.

And where this question is involved in a requested instruction for judgment, at the close of the evidence, in favor of the defend-

ant in an action for conversion by mortgagee against the landowner, where the party making the crop was the mortgagor claiming an undivided one-half interest in the crop, consisting of corn and potatoes, and the contract between the landowner and the mortgagor was for exclusive possession and the landowner to have one-half interest in what was produced and the mortgagor the other half, and the evidence showed that said mortgagor had exclusive possession of the premises and cultivated the crop and mortgaged his interest to the mortgagee and voluntarily moved off of the premises, the evidence was sufficient to show that the maker of the crop was a tenant and not a cropper and it was not error to overrule the motion for a directed verdict in favor of the defendant.

**2. Evidence—Parol Evidence Varying Written Contract of Tenancy.**

In a suit by mortgagee against the landlord for converting to his own use and benefit the part of the crop belonging to the tenant under the terms of a written contract, to the prejudice of the mortgagee. it is not error to exclude evidence offered to show a parol agreement that would change the terms of the written contract in respect to the furnishing and expense in making the crop.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from County Court, Wagoner County; W. B. Moss, Judge.

Action by First National Bank against E. L. Halsell for conversion and damages. Judgment for plaintiff, and defendant appeals. Affirmed.

E. L. Kirby, for plaintiff in error.

Newton & Pinson, for defendant in error.

Opinion by THREADGILL, C. The defendant in error, as plaintiff, brought suit against the plaintiff in error. as defendant, for conversion of a one-half interest in a crop of corn and six acres of potatoes. The parties will be referred to here as they were in the trial court.

The facts in the case were substantially as follows: On February 25, 1920, the defendant, E. L. Halsell, entered into a written contract with A. J. Martin and J. E. Kinney in which he leased to them a farm of about 70 acres for the year of 1920. Plaintiff agreed to furnish them teams, feed for teams, and tools during the term of the contract. The said Martin and Kinney were to pay one-half of the sharpening of the tools; when the crop was made they were to gather and crib the corn raised and were to "receive one-half of the corn placed in the crib and one-half of the potatoes." It was agreed

that in case they moved off the place, at the end of the contract, Halsell was to have the right to buy their one-half of the corn at 10c a bushel less than the market price in Coweta, Okla., on December 15, 1920. It was further agreed that what potatoes were planted and raised Martin and Kinney should market the same and pay for one-half of the seed. Halsell reserved all stalks on the premises. If Martin and Kinney did not stay on the place until 1921, they were to give possession as soon as the crops were gathered. It was further agreed that Halsell was to have "one-half of all other crops raised on said premises." Martin and Kinney took possession of the premises and cultivated about 60 acres in corn and 6 acres in potatoes. About May 18, 1920, Kinney sold his interest in the crop to Martin, who continued in possession and finished cultivating the crop. July 6, 1920, Martin borrowed $282.50 from the plaintiff bank, giving his note payable August 3, 1920. with ten per cent. from maturity and a mortgage on an undivided one-half interest in the crop on the leased premises to secure the same. Before the note fell due Martin moved away, abandoning the crop, and made default in the payment of the note. Thereafter the defendant, Halsell, took possession of the premises and gathered the crop of potatoes and sold them for $1,540.54, and the corn and sold it for $423.60, and appropriated the whole amount to his own use. On December 7, 1921, plaintiff brought this suit in conversion for damages in the sum of $243.75, and attorney's fee of $100. The defendant offered as his defense that he had to harvest and gather the crop; that under his agreement with the parties in making the crop they were to pay one-half of all expenses and were to pay for the groceries he furnished them. and were to bear the expenses of harvesting the crop, and all of said expenses amounted to $966.42, and Martin's interest in the crop was only $888.90, leaving an indebtedness to him in the sum of $77.52.

There was a reply consisting of general denial. The issues, thus joined, were tried to a jury November 1, 1922, and resulted in a verdict and judgment in favor of the plaintiff for the amount sued for, with interest, from which judgment defendant has appealed asking for a reversal and new trial.

1. In the first place defendant contends that the court erred in overruling his motion for an instructed verdict. The defendant based his motion for an instructed verdict on the ground that the testimony show-

ed that the landlord's lien was superior to the mortgage lien claimed by the plaintiff. In discussing this point defendant contends that the question involved depends upon whether or not the evidence showed the contractual relation existing between him and Martin and Kinney to be that of landowner and share-cropper or landlord and tenant. If this relation was that of landowner and share-cropper his motion should have been sustained, but if not the court was correct in overruling it. He cites the following cases: 8 R. C. L. page 373, sec. 19; 16 R. C. L. page 588. sec. 63; Tinsley v. Craig (Ark.) 15 S. W. 897; 98 A. S. R. 953; Ferris v. Hoagland et al. (Ala.) 25 South. 834, page 835.

We find no fault with these authorities, they state the correct principles in distinguishing the two classes of farmers in their relation to the landowner or landlord, and in making the same distinction in determining the contractual relation between the landowner and share-cropper or landlord and tenant, the plaintiff cites the following cases: 16 R. C. L. page 586, sec. 16, and 587, sec. 62; 8 R. C. L. page 373, sec. 19. page 377, sec. 24; Kelly v. Rummerfield, 98 Am. St. Rep. page 954.

All these authorities hold, in substance, that if the contractual relation between the parties is to the effect that the landowner is to have supervising possession of the land to be cultivated, and the party working the land is to be a wage earner, whether in terms of money or part of the crop, the relation is that of landowner and share-cropper, but if the landowner or the person who has the right to possession of the land contract with the party who is to cultivate the land, by which such party is to have exclusive possession of the land to be cultivated for a definite term and the consideration to the landowner is in money or a part of the produce raised on the farm then the relation is that of landlord and tenant.

We have examined the record to determine the question involved here, and we think it is clear, from the written contract, that Martin and Kinney were to have possession of the farm for the year 1920, and were to cultivate and raise and harvest and market the corn and potatoes, and the defendant, Halsell, was to have one-half of the produce from the said farm and they were to have the other half. The terms of the contract were clearly stated. There could be no misunderstanding as to what was meant, and the evidence shows that Martin and Kinney took possession of the premises,

described in the written contract, and cultivated it in corn and potatoes, but before the crop was harvested they both voluntarily left the premises, but while they were in possession, they had the exclusive possession and management of the farm and premises and the relation of landlord and tenant is clearly established by all the facts and circumstances of the case. This being true Martin had a tenant's interest in the crop and had the right to mortgage it to the plaintiff, and the court was correct in overruling the motion of defendant for a directed verdict.

2. In the trial of the case there was some controversy over the right of the defendant to prove a verbal agreement he claimed with Martin and Kinney that he was to furnish them groceries, supplies, and all expenses, incident to farming the lands rented to them, and the court ruled that the written contract was the only contract binding on the plaintiff, and the testimony offered to prove items outside of this contract was inadmissible. We think this was correct. Defendant was permitted to prove without objection the following items of expenses: $87.50 for potato sacks, $20 for seed corn, $12.50 for seed corn, $4.72 for hauling potatoes, and $87.50 for potato sacks.

One-half of these items, except the $4.72. and including the $4.72, for hauling, would make $108.47. In addition to these items the evidence showed that one-half of the cost of sharpening the tools was $11.50 and one-half the cost of repairing cultivator was $9.85; one-half the cost for seed potatoes was $73.65 and the cost of harvesting and marketing the potatoes and corn was $137.10, making the sum total of $340.57, which was more than the amount which could be proved under the terms of the written contract, and this was all the defendant could legally claim due him from the crop cultivated by his tenants. This, taken from $982.14, being one-half the value of the corn and potatoes raised on the place, would leave $623.57, and a part of the crop represented by this $623.57 was subject to the plaintiff's mortgage lien and when the defendant appropriated it to his own use and benefits he was guilty of conversion and the plaintiff was entitled to damages. To allow evidence of an oral agreement and items of expenses under it would have been violative of the rule forbidding changes of the terms of a written contract by verbal agreement.

In the absence of a contract under the law of this state a landlord has no lien on the tenant's part of the crop for supplies

furnished in making the crop, and the cases cited by defendant to show otherwise are not applicable here for the reason they are dealing with the lien under statutory provisions. Under our statute the landlord has a lien for his rent. but not for supplies furnished. As between Martin and defendant, since the whole crop had fallen into defendant's possession, he might have held possession of Martin's part of the rent, or so much thereof as was sufficient to satisfy his legal claims, but he had no such right against the mortgagee, who, in good faith, took a mortgage from the tenant to secure an indebtedness and before the crop passed into the hands of the defendant.

Finding no errors in the record, we are of the opinion the judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. pp. 382, 383 §§ 9, 11; 36 C. J. pp. 698, 712 §§ 1938, 1959. (2) 22 C. J. p. 1129 § 1500.