CHARLES LEFFELMAN, APPELLEE, v. F. H. MATSCHULLAT, APPELLANT.

FILED NOVEMBER 15, 1935. No. 29380.

*Joseph G. Rogers, Matschullat, Matschullat & White* and *Robert A. Nelson,* for appellant.

*C. W. Peasinger, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

Charles Leffelman, the plaintiff and appellee, brought an action in replevin to recover 130 bushels of potatoes. The judgment appealed from found that the plaintiff was the owner of the potatoes and entitled to recover possession thereof, with all costs, including damages for the wrongful withholding of possession thereof in the sum of one cent.

The record shows that the defendant, F. H. Matschullat, lives in Lincoln, Nebraska, and that he owns a small ten-acre tract of land adjoining Randolph, Nebraska, and that he made a lease of this to a tenant, W. H. Burgel, with a stipulation in this written lease against subletting, and Burgel, the tenant, was to pay $25 a month cash rent. He paid rent for one month, and took possession on March 1, 1933. There was a house and barn on the place. The record shows that Matschullat was not out at Randolph until in July. Burgel made an oral agreement with the plaintiff, Leffelman, that if he would come on the premises and raise potatoes he could have half of the potatoes that he raised on the premises. Leffelman thereupon came upon the premises, and with the help of his family they raised the potatoes. In the meantime Matschullat went to Randolph and, without talking to any of the parties at all, started a forcible entry and detainer suit, and the defendant Burgel was evicted from the premises by order of the county court, the eviction taking place late in July, 1933. Thereupon, the landlord and the plaintiff, who was the cropper, each claimed the potatoes, whereupon the landlord offered to give the plaintiff one-half of the potatoes if

he would finish taking care of them, which offer the plaintiff flatly rejected, claiming all of the potatoes. Between August and September 12 the defendant, Matschullat, hired men and spent $44 in caring for the potatoes, the checks being introduced in evidence, and on September 12, 1933, plaintiff started this replevin action to get possession of all of the potatoes, having secured an assignment from Burgel, the tenant, of his alleged interest therein.

There appears to be no controversy on any material point in the evidence. There was no contention that the defendant, Matschullat, ever waived the stipulation in the lease against subletting the premises; therefore, the case presents several legal problems. A landlord owns certain premises; the tenant breaches the conditions of the lease and the landlord puts him off. Now, the question at once arises, has the plaintiff any rights after the landlord has taken the possession of the property away from the tenant? It is necessary to ascertain the exact nature of the relationship between these parties. The landlord claims that Leffelman is a mere cropper on the premises. Did the plaintiff, who was a mere cropper, have any greater rights in the premises than the tenant, Burgel, had?

In the case of *Blachford v. Frenzer,* 44 Neb. 829, it was held: "A subtenant is charged with notice of the existence of the tenant's lease and bound by its terms and conditions." And in the case at bar the landlord had not consented to the tenant subletting the place, and, in fact, was not notified thereof, and, therefore, the plaintiff had no legal rights in the premises except as a mere cropper, and was to receive one-half of the potatoes for his labor in planting and tending the crop.

It was held in *Halsell v. First Nat. Bank,* 109 Okla. 220, "The difference between a cropper and a tenant is that the cropper is a hired hand paid for his labor with a share of the crop he works to make and harvest. He has no exclusive right to possession and no estate in the land nor in the crop till the landowner assigns him a share."

To the same effect is *Maltbie v. Olds,* 92 Atl. 403 (88

Conn. 633) which says: "A 'cropper' being one who culti-
vates the land of another in consideration of a portion of
the crop, having no interest in the land, and hence none in
the crop until divided, his possession being that of the land-
owner." See *Wilcox & Co. v. Deines,* 119 Neb. 692; *Hansen
v. Hansen,* 88 Neb. 517.

A cropper takes his estate and performs his work subject
to the terms of the lease of the tenant under whom he holds.

It has been held that, until a division of the crop has been
made, the owner may maintain replevin to recover the pos-
session thereof. *Angell v. Egger,* 6 N. Dak. 391. However,
in the case at bar the cropper had refused to continue to
care for the crop after the tenant had been evicted, and the
landlord was compelled to hire men and expend the sum of
$44 to bring the crop to maturity.

It was held in *Salley v. Cox,* 46 L. R. A. n. s. 53 (94 S.
Car. 216) : "A cropper forfeits all interest in the crop by
voluntarily abandoning it without reasonable cause or ex-
cuse."

The plaintiff, Leffelman, is unfortunate in having con-
tracted with a defaulting tenant, but certainly he has no
right to replevin against the owner of the land, who took
possession of the premises in a legal manner, as the rent
had only been paid for the month of March and possession
was taken late in July by the action in forcible entry and
detainer.

In the petition of the plaintiff he alleges that he is the
owner of the entire crop of potatoes grown upon the
premises, but if the tenant had not been evicted, and the
original plans had gone through, the plaintiff as a cropper
would only have been entitled in any event to a portion of
the 130 bushels of potatoes; therefore, the allegation in his
petition of ownership has failed.

In our recent case of *Taylor v. Luedke,* 126 Neb. 602,
similar questions were raised, and it was said: "Section
52-601, Comp. St. 1929, construed, and *held* not to provide
for a lien upon the crops in favor of a farm hand, for labor
in plowing the land, planting and tending the crops, as for

labor performed on personal property." See *Sanford v. Modine,* 51 Neb. 728; *Robinson v. Stricklin,* 73 Neb. 242.

If the tenant himself had planted the potatoes and tended them for the first months, and was then ousted because he failed to pay his rent before the crop was matured, could that tenant later on replevin the crop? We think not; and if the tenant did not have that right he could not give to his cropper a greater right than he had in the potatoes himself.

It appears to the court that Leffelman's claim for his loss is not against the owner of the property, but his claim, if any, is against the tenant for the services that he rendered and could not recover on because the tenant defaulted in the payment of his rent, as the tenant had promised to furnish him the land.

This case has been tried in the county court and in the district court, and in our opinion the plaintiff as cropper did not have the title to, and ownership of, the potatoes at the time he filed his petition in replevin. The judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.