JOHN HAMPTON, APPELLEE, v. HENRY C. STRUVE, APPELLANT.

70 N. W. 2d 74

Filed April 29, 1955. No. 33703.

W. O. *Baldwin* and *Van Pelt, Marti & O'Gara,* for appellant.

*George F. Johnson, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action for the recovery of money. Appellee alleged two causes of action against appellant. The first was for the unpaid balance of an indebtedness evidenced by a written memorandum executed by appellant. The second was founded on the claim of appellee that by an agreement between him and appellant the latter was to furnish all machinery, power, and seed required for the efficient operation of land owned by appellant; that appellee would conduct the farming operations and care for the livestock furnished thereon by appellant; that appellee would deliver to market for appellant two-thirds of the grain raised and a like amount of the hay and feed produced on the land; that appellee should have one-third of the increase of the livestock; that the agreement was in effect and the obligations thereof were observed and performed by the parties for 4 years prior to 1951; that appellant refused and failed to perform any of his obligations as provided by the agreement for the year 1951; that appellee in order to perform his duties provided by the agreement was compelled to and he did incur and expend the reasonable cost of securing necessary seed, tractor fuel, use of machinery, and baling hay during the year 1951 in the sum of $1,267; that the market value of one-third of the corn belonging to appellee produced that year on a part of the land which was converted and appropriated by appellant was $600; and that the total amount due appellee from appellant on the two causes of action was $2,544.48.

Appellant denied the claims of appellee except he admitted that there was an agreement made by them late in the year 1946 for the conduct of farming operations and stock raising on land of appellant; that the

parties performed the agreement until late in the year 1950; that it was then by mutual agreement of the parties terminated and the personal property and live-stock involved in the operations of the parties were sold; that there was an account stated between them on about January 15, 1951, and it was agreed that appellant was indebteded to appellee in the amount of $936.86; and that the account stated was a complete settlement of all matters because of the agreement be-tween them except that 110 acres of wheat then grow-ing on land of appellant, planted by appellee in the fall of 1950, should be harvested by appellee at his expense and one-third of the proceeds thereof and the sum of $247.50 the value of the seed used in planting the wheat should be paid to appellant by appellee. Appellant by cross-action claimed the right of recovery of $2,044.64 from appellee on account of the following: His failure to harvest and his failure to permit appellant to harvest in 1951 the 110 acres of wheat mentioned above; the damage to machinery of appellant by appellee; the re-moval and appropriation by him of an electric motor and a water heater from the property of appellant; the value of the pasture of cattle by appellee on the land of appellant for 6 months of 1951; and the reasonable rental value of premises of appellant occupied and used by appellee after the agreement of the parties was ter-minated.

The jury awarded appellee a verdict on each of his causes of action, a judgment was entered thereon, the motion of appellant for a new trial was denied, and this appeal is an attempt to defeat the judgment.

The record establishes that appellant was liable to appellee for the indebtedness pleaded by him in his first cause of action.

Appellant argues that the trial court should have directed a verdict for him at the close of the case-in-chief of appellee as to the second cause of action al-leged because the evidence established that the rela-

tionship between the parties was that of master and servant and not that of landlord and tenant. Specifically the essence of this contention is that the oral contract between the parties was not a lease of land but was a cropping agreement.

The evidence produced by appellee concerning the agreement between him and appellant was in substance as follows: In the first part of December 1946, appellant and appellee, who resided in Mullen, had a conversation about appellant renting his 480-acre farm in Nuckolls County to appellee. He consented to accompany appellant to inspect the land the following Sunday. They did this according to the arrangement. Later about December 15, 1946, appellant and appellee met in Deshler and went to the bank to draw up a lease. Appellee was there introduced to a man by the name of Ude in his office in the bank by appellant and he told Ude that "* * * he wanted him to draw up a lease with him and me." Appellant told Ude what to place in the lease, appellee was present and heard what was said, and Ude prepared it. The persons present while the lease was drawn up were appellant, appellee, and Ude. After the lease was completed by Ude the appellant told appellee that he could take it to his home and he and his wife could examine it to determine if it was satisfactory to them. This was done and appellee and his wife found the lease satisfactory except the date of the termination of the term was stated as December 15, 1947, and they desired that it should be March 1, 1948. Appellee saw and talked to appellant about that a few days later and appellant said it was agreeable to him to change the termination of the term of the lease to March 1, 1948, and that appellee might move on the land as soon as he desired and take care of the cattle that were there. Appellee occupied the land commencing with the last Sunday before Christmas in 1946. He was asked if anyone else had control of the land and his answer was in the negative. He occupied

and used the land until 1952. He entered into possession of the land because of and relying upon the oral agreement between him and appellant as stated in and represented by the lease prepared by Ude, and as modified by the agreement concerning the change when the term should end. He performed the obligations imposed on him by the agreement for each of the years 1947 to 1951, inclusive. After the wheat was harvested from 80 acres of land in Nuckolls County owned by appellant which was not included in the original agreement of the parties made about December 15, 1946, appellant asked appellee if he would take it and farm it like the other land. Appellee consented to do so and did farm and handle it the same as the other land until 1952. The lease dated December 15, 1946, prepared by Ude, was offered and received in evidence. It was not signed by either of the parties because at the time appellee reported to appellant that it was satisfactory except the end of the term should be March 1, 1948, and appellant consented to this change therein, appellant said he was pressed for time concerning other matters and was leaving town that day and for this reason the lease was not signed. There was no agreement that appellant could control what crops should be planted or the manner of performing the operations on the land.

The form of lease prepared by Ude bearing date of December 15, 1946, at the request and in the presence of the parties and upon the advice of appellant given to Ude as to what it should contain was under the circumstances of this case properly received in evidence. A writing relating to the terms of a parol agreement made at the time by a third person under circumstances showing assent thereto by the parties or otherwise made under circumstances as to indicate mutual assent although not in itself a written contract may be competent as substantive evidence tending to establish, in connection with other evidence, the terms of the agreement.

In Hines v. Roberts Bros., 117 Kan. 589, 232 P. 1050, it is said: "It is not error to submit in evidence an unsigned written instrument, nor to permit that instrument to be taken to the jury room, where there is evidence which tends to show that the instrument contains the terms of an oral contract which is the subject of the action." See, also, Nickolls v. Barnes, 39 Neb. 103, 57 N. W. 990; Carstens v. McDonald, 38 Neb. 858, 57 N. W. 757; Lomazzo v. King, 137 Conn. 434, 78 A. 2d 538; Squires v. Kilgore, 92 Fla. 1001, 111 So. 113; Smulcer v. Rogers (Tex. Civ. App.), 236 S. W. 2d 172; Hayward v. Morrison, 194 Or. 335, 241 P. 2d 888; Lanier v. Council, 179 Ga. 568, 176 S. E. 614; 32 C. J. S., Evidence, § 697, p. 591.

A lease of real estate is a hiring or renting of it for a certain time for a named consideration. A tenant rents the land and pays for it either in money or a part of the crops or the equivalent. A cropper is a hired hand who farms the land and is paid for his labor with a share of the crops he works to produce and harvest. The crop belongs to the owner of the land and he pays for the labor of producing it with a part of the crop. A cropper does not have the right of exclusive possession of the land and has no estate in the crop until he is assigned his share thereof by the owner of the land. Hansen v. Hansen, 88 Neb. 517, 129 N. W. 982; Leffelman v. Matschullat, 129 Neb. 884, 263 N. W. 383; Wattles v. South Omaha Ice & Coal Co., 50 Neb. 251, 69 N. W. 785, 61 Am. S. R. 554, 36 L. R. A. 424.

There is much confusion and not a little conflict in the decided cases as to the precise relation of the parties created by a contract of the character of the one involved in this case. It is settled however that a contract to cultivate land on shares may be a lease even though the parties are owners in common of the crop. It has been frequently decided that if the party who does the work and produces the crop has exclusive possession of the land this is conclusive of the relation of

landlord and tenant. Provisions for a fixed term, to give up possession at the end of the term, against underletting or subletting, to keep improvements on the premises in repair, and the like are important indications of an intention to create the status of landlord and tenant. The question of whether the relation is that of landlord and tenant or owner and cropper is primarily for the consideration and determination of the jury if the evidence is inconclusive. The solution depends upon determination of the true intention of the parties.

The instrument prepared by Ude for and at the direction of the parties to this case prominently characterizes itself as a farm lease. It recites that appellant has leased the described property to appellee for a definite term and that he will pay to appellant rent as specified; that the rental share of all crops, hay, and feed will be delivered by appellee to market (not on the premises) for appellant; that appellee will protect all improvements on the premises during the term; that he will promptly at the expiration of the term granted yield up possession of the premises to appellant in as good repair as they were or may be put at any time during the term; that appellee will keep the premises free from weeds and will keep the well, pump, and windmill in good repair; that he will not sublet or re-lease any part of the premises; and that appellant may go upon the premises for specifically limited purposes during the term.

In 15 Am. Jur., Crops, § 49, p. 239, the author says: "Whether a particular instrument is a lease of land or a cropping agreement is resolved by the rules of construction and the distinction between a cropper and a tenant. The most important question to be answered in arriving at the intention of the parties and the consequential relation created is which party was entitled to possession of the land. If it was the intention that the landowner part with, and the other party have, the exclusive possession of the land for the purpose of cultivation, as a general rule the transaction will be con-

sidered a lease and the relation between the parties that of landlord and tenant. * * * The use of technical words usually found in leases tends to show an intention to create the relation of landlord and tenant * * *."

In Harrelson v. Miller & Lux Inc., 182 Cal. 408, 188 P. 800, it is said: "In reaching this conclusion we have not attached controlling importance to the fact that the instrument so characterizes itself (as a lease). But, considered with the general tenor of the instrument, the fact that the parties called it a lease is some evidence that they intended it to operate as such. While retention of possession by the owner is one indication of a cropping agreement, the so-called lease repeatedly treated possession as transferred to Crow, right of re-entry being reserved to the owner for certain limited purposes only. * * * If the arrangement was intended to make Crow a mere cropper, there would have been no necessity for the reservation by the plaintiff of such rights, for under a mere cropping agreement plaintiff would have had the right at any time to enter and occupy the land subject only to the rights of Crow with respect to the crops. It further appears that Crow was required to keep the premises in repair at his own expense. Moreover, a definite term of three years was created. * * * These provisions of the agreement, taken together with the description of the instrument as a lease by the parties themselves, indicate, we think, an intention to execute a lease."

In Davis v. Burton, 126 Mont. 137, 246 P. 2d 236, the court said: "The agreement also provided that parties of the second part 'will deliver up to first parties possession of said leased premises at the expiration of this lease.' This clearly contemplated that defendants should have possession during the term of the agreement. It is a circumstance indicating the intention to create the relation of landlord and tenant. * * * Like other contracts, whether the relation of the parties is that of landlord and tenant or landowner and cropper turns upon the

intention of the parties as gathered from the entire con-
tract; the language in which it is cast and the circum-
stances surrounding its execution. * * * Here the parties
to the contract treated it as a lease and not a cropping
contract by repeatedly using the word 'lease' in the
agreement."

See, also, Larson v. Archer-Daniels-Midland Co., Inc.,
226 Minn. 315, 32 N. W. 2d 649; Cry v. J. W. Bass Hard-
ware (Tex. Civ. App.), 273 S. W. 347; Bank of Pendle-
ton v. Martin, 118 S. C. 74, 110 S. E. 76; Graniteville
Mfg. Co. v. Renew, 113 S. C. 171, 102 S. E. 18; Presby v.
Benjamin, 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317;
State ex rel. Gillilian v. Municipal Court, 123 Minn.
377, 143 N. W. 978; 52 C. J. S., Landlord and Tenant,
§ 797, p. 719.

The agreement involved in this case was oral. The
evidence as to the intention of the parties was inconclu-
sive. The determination of what agreement the parties
entered into was properly submitted to the jury by the
trial court. In 52 C. J. S., Landlord and Tenant, § 797,
p. 721, it is said: "When the agreement is oral and
the evidence as to the intention of the parties is con-
flicting, the question of intention is for the jury * * *."
See, also, Bank of Pendleton v. Martin, supra.

The manner of the submission of this issue to the
jury is not challenged. The verdict has the support
of the most favorable consideration of the evidence and
the reasonable inferences deduced therefrom, and the
verdict may not be disturbed on this appeal unless it
is clearly wrong. Grant v. Williams, 158 Neb. 107, 62
N. W. 2d 532. The record will not permit such a con-
clusion in this case.

The proof made by appellee was appropriate if ac-
cepted, as it was, by the jury to sustain the recovery
awarded appellee by the verdict. Appellant does not
contest the sufficiency of the evidence to justify the
amount of the verdict.

Counsel for appellant inquired of appellee during his

cross-examination as follows: "Did you claim, Mr. Hampton, early in March 1951 that you had rights as a tenant on the premises involved in this lawsuit by reason of an oral agreement between you and Mr. Struve in October 1950?" The court sustained an objection of counsel for appellee to the question. Appellant claims this was prejudicial error. The purpose of the inquiry is indicated by a statement of appellant that "Had it been established, by his (appellee's) own testimony, that he had, at another time, claimed the rights now asserted as arising from an entirely different agreement, his veracity would have been subject to serious question." This inquiry was intended as impeachment. It was collateral to any issue in the case. Griffith v. State, 157 Neb. 448, 59 N. W. 2d 701. The reception of an answer to the question or a rejection of it was within the discretion of the court. There was no error in the ruling unless the court abused its discretion. The record does not show a basis for a claim of abuse of discretion. The reception of evidence collateral to any issue in the case intended to affect the credibility of a witness is usually within the discretion of the trial court and the ruling concerning it is not reason for reversal of the judgment in the case in the absence of an abuse of discretion. Young v. Kinney, 85 Neb. 131, 122 N. W. 679; Peterson v. Andrews, 88 Neb. 136, 129 N. W. 191; Barry v. Anderson, 89 Neb. 332, 131 N. W. 591; Falstaff Brewing Corp. v. Thompson, 101 F. 2d 301. The assignment of error in this respect may not be sustained.

The judgment of the district court should be and it is affirmed.

AFFIRMED.