IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SOUCIE V. CROPLAND FARMS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JASON E. SOUCIE, APPELLANT,

V.

CROPLAND FARMS, INC., A NEBRASKA CORPORATION, APPELLEE.


Filed November 3, 2020.    No. A-20-049.


Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed in part, and in part reversed and remanded with directions.

Mark A. Beck, of Beck Law Office, P.C., L.L.O., for appellant.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellee.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jason E. Soucie appeals and Cropland Farms, Inc., cross-appeals the order of the district court for Hall County which entered judgment in Soucie's favor on his breach of contract claim and in favor of Cropland Farms on two claims contained in its counterclaim. As explained below, we reverse the damages awarded to each party and remand with directions to recalculate damages. We otherwise affirm the district court's order.

## BACKGROUND

In June 2017, Soucie filed a complaint against Cropland Farms, alleging breach of an oral contract and breach of a farm lease. Cropland Farms asserted a counterclaim against Soucie in its answer, claiming that it had sustained damages as a result of Soucie's breach of contract.

A bench trial was held in October 2019, and the evidence established that Cheryl Schultz is the sole owner of Cropland Farms. She owns 1,088 acres of farmland, which she leases to Cropland Farms.

In March 2016, Soucie and Schultz, acting on behalf of Cropland Farms, entered into an oral agreement whereby Soucie would assist in farming the entire 1,088 acres and pay 50 percent of 44 percent of the expenses, and in exchange, he would receive 50 percent of the grain produced on 44 percent of the acres and 50 percent of 44 percent of the FSA and crop insurance payments. There was no agreement that he would farm a particular 44 percent of the land; rather, he agreed to work on all 1,088 acres. Schultz testified that Soucie initially proposed that Cropland Farms rent three of its quarters of land to him, but that she was not excited about Cropland Farms losing any control to a renter. So she proposed the arrangement to which they ultimately agreed because it would allow her to maintain control of her land.

In February 2017, Schultz told Soucie that their arrangement was not going to continue for the 2017 crop year, and at that point, Soucie stopped hauling grain and providing labor for Cropland Farms. Soucie did not pay expenses for the 2016 crop year, and Cropland Farms did not pay him the full 50 percent of 44 percent of the 2016 crop.

After the conclusion of trial, the district court entered a written order. The court found that Soucie met his burden of proof as to his breach of contract claim and that the value of the remaining 44 percent of 50 percent of the 2016 corn crop to which Soucie was entitled was $22,413.15. The court also found that Soucie was entitled to FSA payments of $13,929.08 and crop insurance payments of $15,139.30. In addition, the court determined that Soucie failed to prove that the agreement was a lease of farm ground because the evidence was clear that Schultz was not willing to surrender control over her land and that through Cropland Farms she intended to continue to control the farming decisions. Moreover, the evidence did not indicate to the court that Soucie had sole possession of any portion of the 1,088 acres or any sole decisionmaking authority; thus, Soucie had no right to farm the property after 2016.

The court also concluded that Cropland Farms met its burden of proof as to its counterclaim for breach of contract and an amount owed for the purchase of an all-terrain vehicle (ATV). The court calculated Soucie's portion of the 2016 expenses to be $90,310.39, an amount which included trucking and labor expenses. The court also awarded Cropland Farms $2,500 for the cost of the ATV. Finally, the district court determined that although the parties had agreed that Soucie would pay Cropland Farms for equipment rental, Cropland Farms failed to prove the terms of any agreement as to a price for the equipment. The court, therefore, entered total judgment in favor of Soucie in the amount of $51,481.53 and in favor of Cropland Farms in the amount of $92,810.39. Soucie appeals and Cropland Farms cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Soucie assigns, renumbered, that the district court erred in (1) determining that the parties' arrangement did not constitute a farm lease for purposes of the legal requirement of providing 6 months' notice prior to terminating the lease, (2) failing to award damages for the lost opportunity to farm the ground for the following crop year, and (3) calculating the amount of damages incurred as a result of the violation of the lease arrangement.

On cross-appeal, Cropland Farms assigns that the district court erred in (1) receiving into evidence the contents of a settlement negotiation and (2) determining the amount of expenses owed to Cropland Farms by Soucie.

## STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019). But an appellate court independently reviews questions of law decided by a lower court. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

Soucie claims that the district court erred in determining that the agreement he had with Cropland Farms was not a farm lease for which Cropland Farms was required to provide him 6 months' notice prior to terminating the lease. We find no error in the court's characterization of the parties' agreement.

In *Hampton v. Struve*, 160 Neb. 305, 70 N.W.2d 74 (1955), the Nebraska Supreme Court discussed the difference between a landlord-tenant relationship related to farm land and that of an owner-"cropper." The court explained that a lease of real estate is a hiring or renting of it for a certain time for a named consideration. *Id.* A tenant rents the land and pays for it either in money or a part of the crops or the equivalent. *Id.* A cropper is a hired hand who farms the land and is paid for his labor with a share of the crops he works to produce and harvest. *Id.* The crop belongs to the owner of the land and he pays for the labor of producing it with a part of the crop. *Id.* A cropper does not have the right of exclusive possession of the land and has no estate in the crop until he is assigned his share thereof by the owner of the land. *Id.*

The Supreme Court, in *Hampton v. Struve, supra*, quoted 15 Am. Jur., Crops, § 49, p. 239, which provides

> "'Whether a particular instrument is a lease of land or a cropping agreement is resolved by the rules of construction and the distinction between a cropper and a tenant. The most important question to be answered in arriving at the intention of the parties and the consequential relation created is which party was entitled to possession of the land. If it was the intention that the landowner part with, and the other party have, the exclusive possession of the land for the purpose of cultivation, as a general rule the transaction will be considered a lease and the relation between the parties that of landlord and tenant. . . . The use of technical words usually found in the leases tends to show an intention to create the relation of landlord and tenant . . . .'"

*Hampton v. Struve*, 160 Neb. at 312-13, 70 N.W.2d at 79.

In the present case, the district court observed that the undisputed evidence demonstrated that Schultz was not willing to surrender control over the land and that through Cropland Farms, she intended to continue to control the farming decisions necessary to raise a crop. Additionally, it was not the intention of the parties that Schultz part with, and Soucie have, exclusive possession of the land for the purpose of cultivation; rather, the parties specifically elected not to identify a certain 44 percent of the total land for which Soucie would pay expenses and be entitled to profits and instead agreed that he would farm the entire 1,088 acres. Thus, Soucie was not entitled to possession of the land; rather, he was hired to farm all of the land and was compensated for his labor by receiving a share of the total crop. These characteristics do not support a finding that the parties intended to enter into a lease agreement.

On appeal, Soucie highlights the evidence that he emphatically did not want to be an employee of Cropland Farms. We agree that this evidence conflicts with a finding that the parties intended to enter into an employment contract. But when the agreement is oral and the evidence as to the intention of the parties is conflicting, the question of intention is for the jury, and the verdict may not be disturbed on this appeal unless it is clearly wrong. See *id*. See also *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019) (in bench trial of law action, trial court's factual findings have effect of jury verdict and will not be disturbed on appeal unless clearly wrong). Additionally, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Weyh v. Gottsch, supra*. An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error. *Id*.

Given the evidence described above and the district court's credibility determination of the evidence presented at trial, we cannot find that the court's factual finding is clearly wrong. Accordingly, the court did not err in determining that the parties' agreement did not constitute a farm lease. Based on this conclusion, we also reject Soucie's argument that the court erred in failing to award damages for the lost opportunity to farm the ground for the 2017 crop year because this argument is premised upon a characterization of the agreement as a lease.

We next turn to the issue of damages. On appeal, Soucie claims that the court erred in its calculation of damages in that it awarded damages to him for the 2016 crop value that Cropland Farms owed him and awarded Cropland Farms damages for the expenses Soucie owed; however, the calculation of damages owed to Soucie, which appears to be based on exhibit 4, already deducted the expenses Soucie owed Cropland Farms. In exhibit 4, Soucie used the numbers from a demand letter sent to him by Cropland Farm's attorney. That letter identified an amount of $79,284 owed by Soucie for "inputs" plus $2,304 for diesel and $2,500 for the ATV for a total of $84,088. (We note Soucie mistyped the amount for inputs as $79,294, but his total calculation of amounts owed equals $84,088). Soucie deducted that number from the amount he claimed was owed him to arrive at the $22,413.15 number. Thus, Soucie claims the court awarded Cropland Farms double recovery.

Cropland Farms agrees but raises an additional issue regarding damages in its cross-appeal: it notes that the amount contained in the calculation on exhibit 4 as to what Soucie owes Cropland Farms ($84,088) is not the same amount that the court separately determined that Soucie owes Cropland Farms ($90,310.39). In other words, according to exhibit 4, Soucie owes Cropland Farms a total of $84,088, and when that amount is subtracted from what Cropland Farms owes Soucie, Soucie is due a net amount of $22,413.15. This is the amount that the district court awarded Soucie

as damages on his breach of contract claim. However, the court separately determined that Cropland Farms proved that it was entitled to damages from Soucie for the 2016 expenses in the amount of $90,310.39. As such, the court not only entered a double recovery for Cropland Farms, but the amounts the court concluded that were due to Cropland Farms are inconsistent. We therefore reverse the damages awarded to each party and remand the cause for a recalculation and explanation of the damages owed to Soucie for the 2016 crop and to Cropland Farms for the 2016 expenses.

Cropland Farms additionally argues on cross-appeal that the district court erred in finding that it failed to prove the terms of an agreement as to the price for equipment rental. We disagree.

To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Id*. A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Id*. In *Gibbons Ranches v. Bailey*, the Supreme Court held that when an express lease agreement contemplates the payment of rent in money, the amount of rent is an essential term of the agreement, and because rent is an essential term, an agreement to agree on it in the future is not enforceable.

Soucie claimed that at the March 2016 meeting when he and Schultz entered into the farming agreement, they did not discuss a price for equipment rental. He asserted that it was not until after harvest that Schultz asked him to pay for use of Cropland Farms' equipment. Certain exhibits received into evidence at trial list prices for equipment rental as $20 per acre for Soucie using Cropland Farms' equipment on its land and $30 per acre for use of the equipment on separate land that Soucie owned. But Schultz testified that those figures were not agreed to at the March 2016 meeting. Similarly, Schultz' son stated that he did not recall that they agreed on an amount for equipment rental at that initial meeting. According to Schultz' daughter, at the March 2016 meeting, the parties discussed using the average prices for Nebraska at that time, and if that information was unavailable, they would use the average prices of what farmers in their area were charging. She was unclear and did not recall, however, whether they actually agreed upon a price at that meeting.

The evidence outlined above supports the district court's conclusion that the parties did not agree on a price for equipment rental at the time the farming agreement was formed. Price was discussed, but none of the parties testified that they reached an agreement on the price of rent at that time. Accordingly, there was no meeting of the minds as to an essential term of the contract, and thus, any agreement to pay for equipment rental is not enforceable. Therefore, the district court did not err in holding that Cropland Farms was not entitled to receive damages for equipment rental.

Finally, on cross-appeal, Cropland Farms assigns that the district court erred in receiving into evidence an exhibit that it characterizes as the contents of a settlement negotiation. We disagree with that characterization and therefore find no abuse of discretion in the receipt of the exhibit into evidence.

Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Neb. Rev. Stat. § 27-408 (Reissue 2016). Evidence of conduct or statements made in compromise negotiations is likewise not admissible. *Id*. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *Id*.

The exhibit at issue here is a letter dated February 22, 2017, to Soucie from Cropland Farms' attorney. The letter itself is 2 pages long and the third page contains an accounting of the 2016 crop expenses Cropland Farms claimed Soucie owed it. When Soucie offered the exhibit into evidence at trial, Cropland Farms objected and argued that it was inadmissible because it constituted a settlement negotiation. The district court received the first 4 paragraphs of the letter into evidence and received the third page, containing the calculation of expenses, into evidence.

The first 4 paragraphs of the letter outline the history of this matter and contain factual information. They detail the parties' farming agreement and the fact that Soucie had already been paid a portion of the 2016 grain. These paragraphs also indicate that Soucie had not paid his share of the 2016 expenses, despite having received a demand for payment, and refused to continue transporting the harvested corn and allege that, therefore, he was in breach of the agreement. The third page of the letter lists Cropland Farms' calculations of Soucie's portion of expenses, totaling $110,768.

Although the entirety of the letter and attached calculations may have been sent to Soucie in an attempt to negotiate a settlement, § 27-408 does not require the exclusion of evidence merely because it is presented in the course of compromise negotiations. Nothing in the first 4 paragraphs of the letter indicates an offer to compromise or evidence of conduct or statements made in compromise negotiations. Rather, it represents the factual basis underlying the parties' claims, and other than the amount of expenses Soucie owes to Cropland Farms, the parties do not dispute the information contained in these paragraphs of the letter. We therefore conclude that the district court did not abuse its discretion in admitting these portions of the exhibit into evidence.

## CONCLUSION

We reverse the damages awarded to each party and remand the cause with directions for the district court to recalculate damages consistent with this opinion. The district court's order is otherwise affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.